■ In the Matter of ARTHUR M. DELMHORST, as Executor of BERTON J. DELMHORST, Deceased, et al., Petitioners, v STATE TAX COMMISSION, Respondent. — Proceeding pursuant to CPLR article 78 (transferred to this court by order of the Supreme Court at Special Term, entered in Albany County) to review a determination of the State Tax Commission which sustained a

deficiency in the amount of personal income tax paid pursuant to article 22 of the Tax Law. In April of 1941, Berton J. Delmhorst, decedent,[*] purchased a New York Stock Exchange seat for $29,000. On December 28, 1967, he sold the seat to his son for $457,000, pursuant to a voluntary payment subordination agreement which provided that his son was to pay interest quarterly at the rate of 5% per year on any unpaid principal and for payment of the principal in installments. Decedent received interest of $22,875 per year for each of the years 1968, 1969 and 1970, the taxable years in dispute. No payments were made on the principal of the installment note. Decedent and his wife, petitioner Margaret M. Delmhorst, filed a New York State combined income tax return for 1967. They did not report any gain on the sale of the stock exchange seat in that return. On January 1, 1968, they became residents of Connecticut and filed no further New York State income tax returns. Therefore, the interest payments received in 1968, 1969 and 1970 were not reported. In 1972, the New York State Income Tax Bureau issued a deficiency notice against decedent for the year 1967 in the amount of $21,400 plus interest based on the capital gain realized on the sale of the stock exchange seat (Tax Law, § 654, subd [c]). On the same date, the bureau issued another notice of deficiency against both decedent and his wife for the years 1968, 1969 and 1970 in the total sum of $4,152 plus interest and penalties, which it assessed on grounds that the interest received from the sale of the stock exchange seat constituted income from New York sources (Tax Law, § 632, subd [b], par [1], cl [B]). The State Tax Commission, after hearings, sustained the deficiencies. This proceeding ensued. Petitioners' contention that because no payment was made on the principal due decedent from the sale of the stock exchange seat to his son, no capital gain could be realized and thus no tax imposed, is rejected. Section 654 (subd [c], par [1]) of the Tax Law requires an individual, who changes his status from resident to nonresident, as here, to accrue and include on his New York State income tax return, for the taxable year prior to the change, any net gain which accrues prior to residency change. This accrual is required regardless of the taxpayer's method of accounting and he is required to report the entire amount of the gain remaining unpaid (see 20 NYCRR 148.10 [b] [1]). The only other way to avoid this accrual is to file a bond or other satisfactory security with the Tax Commission before changing residency (Tax Law, § 654, subd [a], par [4]; 20 NYCRR 148.11). There is no evidence that the taxpayers filed such bond or other security in this case. The Tax Commission, therefore, properly ruled that decedent and his wife should have accrued and included on their 1967 New York State combined income tax return the net long-term capital gain realized from the sale of the stock exchange seat even though decedent had not received any of the principal income (Matter of Taylor v State Tax Comm., 83 AD2d 703, 704). Respondent also correctly assigned the value of the stock exchange seat for tax purposes to be the market value of the seat at the time of its sale. The value at that time is conceded to be $457,000, the figure used by the Income Tax Bureau. The portion of the determination relating to the deficiency for the year 1967 should be confirmed. However, that portion of the determination which assessed deficiencies for the years 1968, 1969 and 1970 relating to interest received from the installment note while the taxpayers were nonresidents of New York State should be annulled. The Tax Commission incorrectly ruled that the interest income received from the installment note was taxable as New York income. The income producing intangible personal property is the installment note, upon which the interest was paid, and not the stock exchange seat covered by the note. The installment

---

note was never used in a business, trade, profession or occupation carried on in New York State as is required under the applicable tax provisions (Tax Law, § 632, subd [b], par [2]; see *Matter of Epstein v State Tax Comm.*, 89 AD2d 256). Respondent improperly applied section 632 (subd [b], par [1], cl [B]) of the Tax Law in arriving at its determination herein. *Matter of Taylor v State Tax Comm.* (83 AD2d 703, *supra*) is distinguishable. In any event, it is to be confined to the facts established therein. Determination modified by annulling so much thereof as sustained notices of deficiencies issued against decedent and his wife for the years 1968, 1969 and 1970, and, as so modified, confirmed, without costs; matter remitted to the State Tax Commission for further proceedings not inconsistent herewith. Mahoney, P. J., Kane, Main and Mikoll, JJ., concur.

Yesawich, Jr., J., dissents and votes to confirm in the following memorandum. Yesawich, Jr., J. (dissenting). I respectfully dissent. This case falls squarely within the language of section 632 (subd [b], par [2]) of the Tax Law which taxes "interest * * * from the disposition of intangible personal property" to the extent that the property was used in a "business, trade, profession, or occupation carried on in this state". Surely a New York Stock Exchange seat producing income over a 35-year period which increases in value during that time by more than $400,000 is intangible New York property employed in "a business, trade or profession". The majority's extension of *Matter of Epstein v State Tax Comm.* (89 AD2d 256) beyond the mortgage context to the very different facts presented here effectively rewrites section 632 (subd [b], par [2]) to exclude taxation of any interest generated by the sale of property of this nature, as long as that interest is paid pursuant to the terms of an installment note or like instrument. This result is contrary to the statute's language which explicitly charges that interest created by the sale of such New York property is to be taxed. Engaging in the fiction that it is the note and not the underlying transaction which creates the income will simply invite the artificial structuring of transactions so as to maximize the tax-free interest component. The interpretation given the statute by the Tax Commission is eminently rational. We are obliged to respect it. Accordingly, I would confirm the Tax Commission's determination.