**Verna DOUGHTY, Plaintiff,**

v.

**UNITED STATES POSTAL SERVICE, et al., Defendants.**

**Civ. No. 04-4715 (JBS).**

United States District Court, D. New Jersey.

March 7, 2005.

Shirley Johnson–Naylor, Chance & McCann, LLC, Bridgeton, NJ, for Plaintiff.

Andrew Leven, Assistant United States Attorney, U.S. Attorney's Office, Newark, NJ, for Defendant U.S. Postal Service.

Eric J. Riso, Zeller & Bryant, LLP, Cherry Hill, NJ, for Defendant Michael A. O'Neill.

## OPINION

SIMANDLE, District Judge.

Plaintiff, Verna Doughty, filed a complaint against Defendant Michael A. O'Neill alleging state law tort claims, and against the United States Postal Service ("USPS" or "Postal Service") under the Federal Tort Claims Act ("FTCA" or "Tort Claims Act").[1] This is the motion to dismiss under Rule 12(b)(1), Fed.R.Civ.P., by the Postal Service, which has been joined, in part, by Defendant O'Neill.[2]

1. Defendant Postal Service argues that it is not a proper party to this suit—that under the FTCA only the United States itself, and not federal agencies, may be sued. *See* 28 U.S.C. § 2679(a); *Blackmar v. Guerre,* 342 U.S. 512, 72 S.Ct. 410, 96 L.Ed. 534 (1952). Plaintiff concedes this point and requests that it be granted leave to amend its Complaint. (Pl. Br. at 3–4.)

Additionally, Defendant Postal Service maintains that Plaintiff's request for a jury trial in this case is improper as plaintiffs are not entitled to jury trials under the Act. *See* 28 U.S.C. § 2402. Plaintiff also concedes this point, but asks that she be granted leave to amend her Complaint so that the request for a jury trial be limited to the tort claims against Defendant O'Neill in Count 1. (*Id.* at 4.)

2. By his letter brief dated February 3, 2005, Defendant O'Neill "join[ed] in the Motion to Dismiss Plaintiff's Complaint for all the reasons set forth in footnote 1 and Section B of the brief filed on behalf of the USPS." (O'Neill ltr., dated Feb. 3, 2005, at 2.) In the referenced sections, the Government notes that the FTCA does not permit suits against individual employees acting within the scope of employment. (Govt Br. at 2 n. 1., 13.) O'Neill does not join in Section III(A)(2) of the Government's Brief in which the USPS argues that O'Neill was acting outside the scope of his employment at the time the alleged sexual assault occurred. (Gov't Br. at 4–6.) Thus, without providing any substantive argument therefor, O'Neill implicitly asserts that he was acting within the scope of his employment during the time of the alleged incident and, therefore, is entitled to immunity from suit under the Act. 28 U.S.C. § 2679(b)(1). At oral argument, however,

## I. BACKGROUND

Plaintiff, a postal employee at the postal facility in Bellmawr, New Jersey, alleges that on March 26, 2003, at approximately 10:00 a.m., Defendant O'Neill arrived unannounced and uninvited at Plaintiff's residence in New Jersey. (Compl. ¶¶ 1, 7.) Defendant allegedly told Plaintiff that he had come to her home to look at a tree that had fallen in her yard. (*Id.* ¶ 8.) The two had discussed the fallen tree on a prior occasion while at work. (*Id.*) While Defendant was in Plaintiff's backyard looking at the tree, Plaintiff retreated to the inside of her home. (*Id.* ¶ 9.) Defendant then approached the residence and, over Plaintiff's voiced objections, entered her home. (*Id.*) O'Neill walked through each room on the ground level of the home and proceeded to the bedroom, again allegedly over Plaintiff's voiced objections. (*Id.* ¶¶ 10, 11.) According to the Complaint, Plaintiff grabbed the door handle to the bedroom in an attempt to prevent O'Neill's entry. (*Id.* ¶ 11.)

While in the bedroom with Plaintiff, O'Neill allegedly unzipped Plaintiff's pants and then sexually assaulted her despite her repeated objections and attempts to free herself from him. (*Id.* ¶¶ 13–17.) According to the Complaint, Defendant eventually stopped and fled the residence. (*Id.* ¶ 17.) In Count 1 of her Complaint, Plaintiff alleges various state law tort claims against O'Neill.

In Count 2 of her Complaint, Plaintiff alleges that the USPS is liable for the injuries caused by the alleged sexual assault. (Compl. ¶¶ 18–22.) On the date of the alleged incident, according to the Complaint, Defendant O'Neill was employed by the Postal Service at the Bellmawr, New Jersey postal facility. (*Id.* ¶ 6.) The Postal Service alleges that he was employed there

as a flat sorter mail processor responsible for processing magazines and legal sized envelopes. (McNeill Decl. ¶¶ 4, 5.) O'Neill's assigned hours at that facility during the month of the alleged attack were from 8:30 p.m. to 5:00 a.m., between which times he was not authorized to leave the facility. (*Id.* ¶ 6.)

The Postal Service strictly prohibits its employees from assaulting and/or engaging in sexual misconduct against other employees or postal patrons. (*Id.* ¶ 11.)

## II. MOTION TO DISMISS UNDER RULE 12(b)(1)

■■■ "Rule 12(b)(1) [of the Federal Rules of Civil Procedure] ... attacks the right of a plaintiff to be heard in Federal Court." *Cohen v. Kurtzman,* 45 F.Supp.2d 423, 428 (D.N.J.1999). A motion under Rule 12(b)(1) may allege two distinct sorts of jurisdictional defects. *Id.; see* 5B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1350 (3d ed.2004). The first is a "facial challenge" to the pleader's failure to comply with the pleading obligation set forth in Rule 8(a)(1), Fed.R.Civ.P., meaning that the allegations in the complaint are insufficient to demonstrate federal subject matter jurisdiction as the rule requires. The second type of challenge, and the one presented here, involves an attack on "the existence of subject matter jurisdiction in fact, quite apart from any pleading." *Mortensen v. First Federal Savings and Loan Assoc.,* 549 F.2d 884, 891 (3d Cir. 1977). This sort of deficiency may exist despite the formal sufficiency of the Rule 8(a)(1) allegations in the pleading. *See* 5B Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 1350 (3d ed.2004).

Defense Counsel for O'Neill abandoned that assertion.

■ Where federal jurisdiction is challenged by the defendant under Rule 12(b)(1) and "federal jurisdiction is dependent on certain facts," the court is not limited to the four corners of the complaint. *Land v. Dollar*, 330 U.S. 731, 735 n. 4, 67 S.Ct. 1009, 91 L.Ed. 1209 (1947); *Armstrong World Indus. v. Adams*, 961 F.2d 405, 410 n. 10 (3d Cir.1992). "In assessing a Rule 12(b)(1) motion, the parties may submit and the court may consider affidavits and other relevant evidence outside of the pleadings." *Armstrong World Indus.*, 961 F.2d at 410 n. 10. Where the moving party attacks jurisdiction with supporting affidavits, "the plaintiff has the burden of responding to the facts so stated." *Id.* "A conclusory response or a restatement of the allegations of the complaint is not sufficient," *id.*, especially considering that in a Rule 12(b)(1) motion "no presumptive truthfulness attaches to the allegations of [the] plaintiff." *Kurtzman*, 45 F.Supp.2d at 428 (citing *United States ex rel. Dunleavy v. County of Delaware*, 123 F.3d 734, 736 n. 2 (3d Cir.1997)).

## III. DISCUSSION

### A. *Federal Tort Claims Act*

"The Federal Tort Claims Act waives sovereign immunity against persons suing the federal government for commission of various torts." *Simon v. United States*, 341 F.3d 193, 200 (3d Cir.2003). "[T]he United States is only liable [under the FTCA] for negligent or wrongful acts of government employees acting within their scope of employment." *Matsko v. United States*, 372 F.3d 556, 559 (3d Cir.2004); *see* 28 U.S.C. § 2670(b)(1).

■ In making a determination of whether the defendant was acting in such a capacity, the court must look not to the plaintiff's claims as pleaded but, rather, to the defendant's conduct giving rise to the claim. *Borawski v. Henderson*, 265 F.Supp.2d 475, 482 (D.N.J.2003). Whether a defendant was acting within the scope of his employment at the time of the underlying incident must be decided in accordance with the law of the State where the alleged incident took place. *Id.* at 482.

■ In New Jersey, conduct is generally considered to be within the scope of employment if:

(1) it is the kind that the servant is employed to perform;

(2) it occurs substantially within the authorized time and space limits of employment;

(3) it is actuated, at least in part, by a desire to serve the master; and

(4) if force is intentionally used by the servant against another, that use of force is not unexpectable by the master.

*Id.* (citing *Di Cosala v. Kay*, 91 N.J. 159, 450 A.2d 508, 513 (1982)); Restatement (Second) of Agency, § 228 (1958). "Where these criteria are satisfied, even intentional torts and crimes may be considered within the scope of employment." *Roth v. First Nat'l Bank of N.J.*, 169 N.J.Super. 280, 404 A.2d 1182, 1185 (1979).

### B. *Plaintiff Has Not Satisfied Her Burden of Demonstrating Subject Matter Jurisdiction*

■ Defendant USPS has moved to dismiss the Complaint under Rule 12(b)(1), Fed.R.Civ.P., arguing, in the first instance, that Defendant O'Neill was acting outside the scope of his employment at the time of the alleged incident and, thus, that Plaintiff's claims against the Government can not be sustained under the FTCA. *See* 28 U.S.C. § 2679(b)(1). Plaintiff argues only that the scope of employment issue should not be taken up by the Court until discovery has concluded. (Pl. Br. at 1–2.) How-

ever, in her Brief and at oral argument, Plaintiff's counsel was unable to make any proffer as to how, based on the conduct she alleges in her Complaint, Defendant O'Neill might, after further discovery, be found to have been acting within the scope of his employment at the time of the alleged incident. And, as the discussion below makes clear, no reasonable reading of the Complaint and uncontested facts in the Postal Service's declaration can demonstrate that Defendant may have been acting in that capacity. As discussed below, the essential jurisdictional facts are not disputed, and even limited discovery is not warranted.

### C. The Conduct Alleged by Plaintiff Was Outside O'Neill's Scope of Employment

#### 1. O'Neill Was Not Employed To Perform the Conduct Alleged Here

The Court has before it the Declaration of Marlon S. McNeill Sr., who, at the time of the alleged incident, was employed by the USPS as the Supervisor of Distribution Operations at the South Jersey Processing & Distribution Center in Bellmawr, New Jersey. (McNeill Decl. ¶ 2.) In that capacity, Mr. McNeill was responsible for supervising Defendant O'Neill. (Id. ¶ 3.) According to Mr. McNeill, Defendant O'Neill was assigned the duties of processing magazines and legal size envelopes. (Id. ¶ 4.) His assigned hours were 8:30 p.m. until 5:00 a.m. (Id. ¶ 6.) Moreover, the Postal Service Policy prohibits its employees from committing acts of sexual misconduct. (Id. ¶ 11.) Clearly, O'Neill was not employed to perform the conduct alleged here.

#### 2. The Alleged Conduct Took Place While O'Neill Was Off-Duty and Off Work Premises

Once again, O'Neill's assigned hours at the time the alleged incident occurred were 8:30 p.m. until 5:00 a.m., during which times he was not authorized to leave the Bellmawr facility. (Id. ¶ 6.) The alleged conduct took place roughly at 10:00 a.m. at Plaintiff's private residence in New Jersey. Obviously, then, the alleged conduct did not take place while O'Neill was on-duty or on work premises.

#### 3. O'Neill's Alleged Conduct Was Not Motivated By A Desire to Serve the Postal Service

Plaintiff offers no explanation as to how the conduct alleged here was motivated by a desire to serve the Postal Service. Similarly, based on the factual allegations made by Plaintiff and the Declaration of Marlon McNeill, the Court is unable to articulate a reasonable explanation. Indeed, the actions alleged here are strictly forbidden by the Postal Service. (McNeill Decl. ¶ 11.)

#### 4. The Postal Service Could Not Have Expected the Alleged Conduct

Finally, as the Postal Service forbids intentional acts of sexual misconduct, it could not have reasonably expected the conduct alleged here.[3] (See id.)

Taking all four factors into account, New Jersey law squarely dictates that O'Neill was acting outside his scope of postal employment when he visited a fellow postal employee during non-working hours, at her home, using a pretext that had nothing to do with his employment, and allegedly

---

3. Plaintiff has alleged that O'Neill's sexual assault was foreseeable by the Postal Service, because complaints of lesser misbehavior toward female Postal Service employees had been registered. Even if, for the sake of argument, O'Neill's criminal assault was not unforeseeable, none of the first three factors even remotely places O'Neill's conduct near the arguable zone of scope of employment.

assaulted her. Since the conduct complained of arises outside O'Neill's scope of employment, jurisdiction is lacking under the FTCA, 28 U.S.C. § 2679(b)(1).

### D. *FTCA Excludes Claims for Assault and Battery*

■ Even if the Court were to find that Defendant O'Neill was acting within the scope of his employment at the time he allegedly sexually assaulted Plaintiff, any claims against the Government arising therefrom would be prohibited under the FTCA. Specifically, the Tort Claims Act expressly bars claims made against the United States "arising out of assault [or] battery by a federal employee acting within the scope of his employment." 28 U.S.C. § 2680(h).

Plaintiff argues that "the substance of the claim is not based on assault." (Pl. Br. at 2.) Rather, according to Plaintiff, the claims here arise from the failure of the USPS to adequately warn its employees of O'Neill's "propensities" for stalking and harassment of other employees, and to properly discipline O'Neill for prior misconduct. (*Id.*) The issue of whether a negligence claim against the Government arising from an assault or battery by a federal employee may be maintained absent the Government's owing an independent duty to the claimant has been resolved.

In *United States v. Shearer,* 473 U.S. 52, 53, 105 S.Ct. 3039, 87 L.Ed.2d 38 (1985), the Court "granted certiorari to decide whether the survivor of a serviceman, who was murdered by another serviceman, may recover from the Government under the Federal Tort Claims Act for negligently failing to prevent the murder." In answering that question in the negative, the Court rejected the survivor's claim that

the Government had " 'negligently and carelessly failed to exert a reasonably sufficient control over' " the murderer and " 'failed to warn other persons that he was at large.' " *Id.* at 54, 105 S.Ct. 3039. In so holding, the Court noted that

> [r]espondent cannot avoid the reach of § 2680(h) by framing her complaint in terms of negligent failure to prevent the assault and battery. Section 2680(h) does not merely bar claims *for* assault or battery; in sweeping language ∙ it excludes any claim *arising out of* assault or battery. We read this provision to cover claims like respondent's that sound in negligence but stem from a battery committed by a Government employee. Thus, "the express words of the statute" bar respondent's claim against the Government.

*Id.* at 55, 105 S.Ct. 3039.

A similar question was revisited by the Court three years later in *Sheridan v. United States,* 487 U.S. 392, 108 S.Ct. 2449, 101 L.Ed.2d 352 (1988), where it somewhat limited its holding in *Shearer.* There, "an obviously intoxicated off-duty serviceman named Carr fired rifle shots into an automobile being driven by petitioners on a public street near the Bethesda Naval Hospital." *Sheridan,* 487 U.S. at 393–94, 108 ˙ S.Ct. 2449. Petitioners brought suit against the United States claiming that their injuries were caused by the Government's negligence in allowing Carr to leave the hospital carrying a fully loaded rifle. The Court held that the claim before it was not one "arising out of" an assault or battery within the meaning of 28 § U.S.C. 2680(h). *Id.* at 401–02, 108 S.Ct. 2449. Notably, though, the Court assumed for purposes of its opinion that under applicable state law there existed a "Good Samaritan" duty to protect individu-

als from the sort of conduct at issue there.[4] As such, the duty owed by the Government to the victim in that case was independent from the employment status of the assailant. Thus,

> [a]s alleged in this case, ... the negligence of other Government employees who allowed a foreseeable assault and battery to occur may furnish a basis for Government liability that is entirely independent of Carr's employment status.... [I]t seems perfectly clear that the mere fact that Carr happened to be an off-duty federal employee should not provide a basis for protecting the Government from liability that would attach if Carr had been an unemployed civilian patient or visitor in the hospital. Indeed, in a case in which the employment status of the assailant has nothing to do with the basis for imposing liability on the Government, it would seem perverse to exonerate the Government because of the happenstance that Carr was on a federal payroll.

*Id.*

More recently, the Third Circuit faced this issue in *Matsko v. United States,* 372 F.3d 556 (3d Cir.2004). There, the plaintiff brought a tort action against the Government for injuries inflicted by a federal employee during a business visit to the Mine Safety and Health Administration. In addition to alleging liability based on a theory of respondeat superior, the plaintiff asserted that the United States was liable because it had breached a duty owed to him as a business invitee. *Id.* at 557.

After applying Pennsylvania law to the scope of employment question, the court upheld the district court's determination that the defendant federal employee was acting outside the scope of his employment at the time of the alleged misconduct. *Id.* at 560. Moreover, the court held that the "investigative officer" provision of the assault or battery exception under § 2680(h) did not apply. For those reasons, the court upheld the dismissal of the claims under the FTCA for lack of subject matter jurisdiction. *Id.*

However, relying on *Sheridan,* the court further held that "[t]he fact that a government employee acting outside the scope of his employment committed an injurious assault or battery will not preclude liability against the government for negligently allowing the assault to occur." *Matsko,* 372 F.3d at 561. To be sure, the court noted that where a negligence claim against the Government is closely related with the employment status of the defendant, and where there is no independent duty owed to the plaintiff, as in cases "stem[ming] from negligent hiring, training or supervision," the claim is nothing more than a "subterfuge to mask an otherwise precluded claim." *Matsko,* 372 F.3d at 561 n. 10. In other words, where a negligence claim against the Government does not arise from an independent duty owed to a third party but, rather, depends on the employment status of the tortfeasor, the negligence claim is precluded by the FTCA. *See, e.g., Doe v. United States,* 838 F.2d 220, 223 (7th Cir.1988) ("Congress used the broader section 2680(h) language so that plaintiffs could not disguise *respondeat superior* claims as 'negligent supervision' claims, sneaking them in through the courthouse back door."); *Pottle v. United States,* 918 F.Supp. 843, 848 (D.N.J.1996) ("It is clear that a respondeat superior claim cannot be brought against the government simply by a plaintiff's use of the

---

**4.** Specifically, the Court assumed that the facts would have supported recovery under state law on a negligence theory if the naval hospital was privately owned and operated. *Sheridan,* 487 U.S. at 401, 108 S.Ct. 2449.

words 'negligent hiring, training or supervision.' "); *Ryan v. United States,* 156 F.Supp.2d 900 (N.D.Ill.2001) ("[T]he legislative history of § 2680(h) indicates that Congress intended to bar negligent hiring and supervision claims where there is not an independent duty.") In *Matsko,* 372 F.3d at 561 n.10, though, there was an independent duty to business invitees under state law and, thus, the FTCA dismissal was not dispositive of the claim based on the Government's negligence.

Finally, in *Feller v. United States,* No. 04–2802, 2005 WL 516165 (3d Cir.2005) (per curiam), the Third Circuit, in an unreported decision applying *Matsko,* held the United States immune under the FTCA for claims of negligent training, retention and supervision based on the alleged sexual assault of the plaintiff by her mail carrier.

■ The instant case is practically indistinguishable from *Feller.* Plaintiff here argues in her brief that the Government was negligent for failing to warn its employees of the dangerous "propensities" of O'Neill.[5] (Pl. Br. at 2.) The Postal Service is correct that Plaintiff's claims against the Government are wholly dependant on O'Neill's status as a postal employee. *See Feller,* No. 04–2802, 2005 WL 516165, slip op. at 4. Indeed, Plaintiff nowhere argues that if O'Neill were not a postal employee that her negligence claim against the Gov-

ernment could be maintained. That in the present case O'Neill was acting outside the scope of his employment, while the letter carrier in *Feller* was on his normal route at the time, renders the Postal Service's duty to warn even more attenuated than it was in *Feller. Shearer* and its progeny warrant dismissal of this claim.

E. *The Court Will Decline to Entertain the Remaining Supplemental Claims*

■ The Court's holding that O'Neill was acting outside the scope of his employment eliminates the protection from suit he would otherwise be afforded as a federal employee under the FTCA. *See* 28 U.S.C. § 2679(b)(1). As jurisdiction over the claims under the FTCA is lost upon dismissal of the Postal Service, the Court has discretion to dismiss the supplemental state law claims against O'Neill as well. *See* 28 U.S.C. § 1367(c). For the following reasons, the Court will exercise that discretion.

First, this Court never had jurisdiction over Plaintiff's FTCA claims. Second, there is no independent basis for jurisdiction over Plaintiff's state law claims. *See* 28 U.S.C. § 1367(c)(3). Third, the case is at its earliest stage. Finally, at oral argument Plaintiff's counsel expressed her indifference to whether her remaining claims proceed in federal or state court. Accord-

---

**5.** Actually, the Complaint attempts to state a cause of action on the grounds that "[t]he United States Postal office was aware or should have been aware of the dangerous propensities that its employee had regarding the stalking and harassment of other employers [sic]." (Compl. ¶ 22.) Though that is not a short and plain statement of a claim for negligent failure to warn, *see* Rule 8(a)(2), Fed.R.Civ.P., for the reasons stated above, even if the claim were properly stated, it still would be deficient as a matter of law because the claim arises out of assault rather than out of the violation of some other duty.

Moreover, New Jersey law would not recognize an employee's cause of action against an employer for negligent failure to warn of a fellow employee's dangerous propensities, since such a claim of negligence is barred under the Workers' Compensation Act. *See* N.J.S.A. 34:15–8; *Brodsky v. Grinnell Haulers, Inc.,* 181 N.J. 102, 853 A.2d 940, 947 (2004) ("[T]he Workers' Compensation Act bars a plaintiff employee from suing a negligent employer for damages.")

ingly, the Court will dismiss the state law claims against Defendant O'Neill for lack of subject matter jurisdiction without prejudice to refiling in the Superior Court of New Jersey or other court of competent jurisdiction.

## IV. CONCLUSION

For the aforementioned reasons, the motion to dismiss by Defendant Postal Service will be granted and the Court will decline to entertain supplemental jurisdiction over the state law tort claims against Defendant O'Neill. The accompanying Order is entered.

### ORDER OF DISMISSAL

This matter came before the Court upon the motion to dismiss under Rule 12(b)(1), Fed.R.Civ.P., by Defendant United States Postal Service [Docket Item 6]; and said motion having been joined, in part, by Defendant O'Neill [Docket Item 8]; and

The Court having considered the written submissions by all parties; and having heard oral argument at a hearing on March 3, 2005; and

For the reasons expressed in the Opinion of today's date;

IT IS this *7th* day of March, 2005 hereby

ORDERED that the motion to dismiss by the United States Postal Service is *GRANTED;* and

IT IS FURTHER ORDERED that Plaintiff's remaining state claims against Defendant O'Neill are *DISMISSED WITHOUT PREJUDICE.*